**Jane DOE, Plaintiff,**

v.

**COUNTY OF MILWAUKEE, a municipal corporation, Defendant.**

**Civ. A. No. 93–C–1097.**

United States District Court,
E.D. Wisconsin.

Jan. 10, 1995.

Mark J. Rogers, Angermeier & Rogers, Milwaukee, WI, for plaintiff.

Mary Ellen Poulos, Principal Asst. Corp. Counsel, Milwaukee, WI, for defendant.

## DECISION AND ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

REYNOLDS, District Judge.

Jane Doe ("Doe")[1] commenced this employment discrimination action against the County of Milwaukee ("County") on October 8, 1993. On the eve of trial, the County filed a motion to amend its answer and for judgment on the pleadings. For the reasons which follow, the court shall grant the County's motion to amend its answer, and deny the motion for judgment on the pleadings.

### I. Summary of the Case

Jane Doe worked as an assistant hospital administrator at Milwaukee County Medical Complex until she was terminated on April 13, 1992. She alleges she was terminated in violation of Title II of the Americans with Disabilities Act ("ADA") because of her multiple personality disorder. She seeks back pay and reinstatement, plus damages for emotional distress, and reimbursement for medical and psychiatric expenses.

On September 14, 1992, 154 days after being terminated, Doe filed a discrimination claim against the County at the Wisconsin Equal Rights Department ("ERD"). The ERD did not have a work sharing arrangement with a federal agency in the area of handicap discrimination[2] and therefore did not pass Doe's claim onto the United States Equal Employment Opportunity Commission. The ERD investigated and made a finding of probable cause in favor of Doe. On October 8, 1993, over 500 days from the date of her termination, Doe filed this employment discrimination action in federal court.[3] The Wisconsin ERD matter was

---

1. In a hearing on December 5, 1994, the court granted Doe's motion to proceed under a pseudonym for pretrial purposes, but held in abeyance the question of whether she could proceed under a pseudonym at trial.

2. The ERD has agreed to refer age, race, creed, color, sex, and national origin discrimination claims to the EEOC. *See* ERD Complaint Form 4206 (R. 8/91).

3. Doe also named Wisconsin Physicians Services as a plaintiff, but the parties and court agreed to dismiss WPS as a party on December 10, 1994.

about to be set for a hearing when Doe and the County agreed to hold it in abeyance until this federal case was resolved. On November 2, 1993, the County answered Doe's ADA complaint. The County did not raise a statute of limitations or exhaustion of remedies defense, but did say that the "Defendant ... denies that Plaintiff has a cause of action under any jurisdictional basis stated [in the complaint]." [4]

On November 21, 1994, the County moved to amend its answer to include a statute of limitations/administrative exhaustion defense. The court conducted oral argument on the issue on December 5, 1994, at which time the County conceded that Title II of the ADA does not contain an administrative exhaustion requirement. Nevertheless, the County argued that under 28 C.F.R. § 35.170, Doe should have filed her complaint in federal court within 180 days of termination.

## II. Analysis

The court shall discuss the nature of the statute under which Doe sues, and then briefly address the motion to amend the answer and the question of administrative exhaustion under Title II of the ADA. Finally, the court shall deal with the somewhat troublesome question of which statute of limitations to apply to Title II cases brought in federal court.

### A. Coverage of Title II of the ADA

The relevant substantive provision of Title II of the ADA, under which Doe brought her claim reads:

> Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. "Public entity" includes any state or local government and any department or other instrumentality of a state or local government under 42 U.S.C. § 12131(1)(A) and (B). The regulations under Title II apply to all services, programs, and activities provided or made available by those entities. 28 CFR § 35.102. Title II prohibits disability discrimination by public entities in providing aid, benefit, or service, through contracts, licensing, or determination of sites for facilities, and requires that the public entities make reasonable modifications in policies, practices, or procedures to avoid discrimination on the basis of disability. 28 CFR § 35.130. Title II, then, applies to all sorts of discriminatory practices and environments, not just employment. 28 C.F.R. §§ 35.130, 35.140., 35.150, & 35.160. The DOJ comments to the regulations state that:

> Title II of the ADA extended the requirements of section 504 [of the Rehabilitation Act of 1973] to *all* services, programs, and activities of State and local governments, not only those that receive Federal financial assistance.

28 C.F.R., App. A, Comment on subpart F at 463 (emphasis added). As to employment discrimination, the regulations state:

> (a) No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.

> (b)(1) For purposes of this part, the requirements [for nondiscriminatory practices] of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 CFR part 1630, apply to employment in any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I.

> (2) For the purposes of this part, the requirements [for non-discriminatory practices] of section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Department of Justice in 28 CFR part 41, as those requirements pertain to employment, apply to employment in any service, program, or activity conducted by a public entity if that public

---

4. On August 9, 1994, the County moved for summary judgment based upon the theory that Doe was an at-will employee and therefore not covered by the ADA. The court rejected this theory in an order dated November 3, 1994.

entity is not also subject to the jurisdiction of title I.

28 CFR § 35.140.

## B. County's Motions to Amend Answer

Two weeks before the scheduled trial date, the County filed a motion to amend its answer to include an exhaustion of administrative remedies and statute of limitations defense. The grounds for the motion is that during preparation for trial, the County discovered that Doe failed to file her claim with a federal agency or court within the 180 days the County believed to be required by the ADA. Doe asserts that the court should not grant the motion to amend under Fed. R.Civ.P. 15(a) [5] at this late stage in the litigation. However, Doe has provided no facts supporting a finding of equitable tolling or equitable estoppel,[6] and the court finds that the County has not waived the statute of limitations defense. *See* Fed.R.Civ.P. 12(h)(2) (a party can assert a statute of limitations defense in a motion for judgment on the pleadings or at trial). The court shall therefore grant the County's motion to amend the pleading.

## C. Administrative Exhaustion Not Required

Although Doe filed her case with the Wisconsin ERD, she did not file with a federal agency. Originally, the County argued that such a failure to exhaust federal administrative remedies was fatal. However, the parties now agree that Title II of the ADA contains no administrative exhaustion requirement. That is because this title takes its "remedies, procedures, and rights" from those set forth in § 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a).[7] 42 U.S.C.S. § 12133.[8] The Rehabilitation Act, from which Title II of the ADA draws its procedures and remedies, does not require the exhaustion of administrative remedies prior to bringing a private right of action in federal court.[9] The appendix to subpart F of part 35 of the Justice Department regulations governing Title II of the ADA quotes the following passage from the House report discussion regarding proceeding directly to federal court under Title II of the ADA: "[C]onsistent with section 504 [of the Rehabilitation Act of 1973], it is not the Committee's intent that persons with disabilities need to exhaust Federal administrative remedies before exercising their private right of action." 28

---

**5.** Under Fed.R.Civ.P. 15(a), once the responsive pleadings have been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

**6.** Equitable tolling allows a plaintiff to avoid the limitations bar if she is unable to obtain vital information on the existence of a claim despite due diligence. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Equitable estoppel takes effect if the defendant has taken active steps to prevent the plaintiff from suing on time. *Id.* at 450–51.

**7.** The relevant section of 29 U.S.C. § 794a reads:
(a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 USCS §§ 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act [29 USCS § 794].
Title VI of the Civil Rights Act of 1964 [42 U.S.C.S. §§ 2000d], which prohibits exclusion from benefits of, and discrimination under, federally assisted programs on the basis of race, color, or national origin, does not require the

procedural process contained in Title VII of that Act, or its concomitant time limits. Instead, courts have implied a private right of action and no exhaustion requirement. *See, Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (Title VI affords a private cause of action and stating that individual suits may be appropriate in advance of exhaustion of remedies); *Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 426 (7th Cir.1986) (no administrative exhaustion requirement under Title VI in federal court).

**8.** Under 42 U.S.C. § 12133:
The remedies, procedures, and rights set forth in section [505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a)] shall be the remedies, procedures, and rights this [title] provides to any person alleging discrimination on the basis of disability in violation of section [202] [42 USCS § 12132].

**9.** *See Cook v. Rhode Island, Dept. of Mental Health, Retardation & Hosps.*, 783 F.Supp. 1569 (D.R.I.1992) (Title VI, incorporated into § 794a, does not include the procedural process of Title VII or its time limits) *aff'd*, 10 F.3d 17 (1st Cir.1993).

C.F.R., App. A, Comment on subpart F at 463. Thus, the courts that have ruled on the issue have found that because Title II takes its procedures from the Rehabilitation Act, it does not contain an exhaustion requirement, and Title II cases can be filed without having filed with a federal agency first.[10] *Petersen v. University of Wis. Bd. of Regents,* 818 F.Supp. 1276 (W.D.Wis.1993); *Noland v. Wheatley,* 835 F.Supp. 476, 483 (N.D.Ind. 1993); *Finley v. Giacobbe,* 827 F.Supp. 215, 219 n. 3 (S.D.N.Y.1993); *see also Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); 42 U.S.C. §§ 12117 and 12133 (outlining enforcement provisions of Titles I and II of the ADA).

Therefore, Doe's failure to file with a federal agency is not detrimental to her case, so long as she has filed in this court in a timely fashion.

### D. What is the Statute of Limitations?

Although the County now concedes that Doe need not have filed her claim in a federal agency before filing in this court, it argues that Doe has not met the statute of limitations for filing her claim here. Doe filed this case 543 days after being terminated from her job. The question of which statute of limitations applies to a Title II case has yet to be resolved, and so the parties have presented the court with three possible statutes of limitations to apply. The County contends that the regulations applying to Title II offer the statute of limitations. However, Doe counters that the limitations period in the regulations is expressly limited to agency filings, and not relevant to the circumstance in which a plaintiff files her Title II case in federal court. She argues that the court should apply the rule that when Congress has not established a time limitation for a federal cause of action, the court must adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). She says that this rule leads the

court to a Wisconsin's six-year limitations period for injuries to character or rights. The County says that if the court should find the regulations inapplicable to federal court filings, then the 300–day period of the Wisconsin Fair Employment Act ("WFEA") should be used. Under either the 180– or 300–day period, Doe's claim would be time-barred. The court shall explore these three limitations possibilities.

### 1. 180 Days of 28 C.F.R. § 35.170

▪ The first is the 180–day limitation period prescribed by 28 C.F.R. §§ 35.170, which this court must follow if it applies to federal court filings as well as agency filings. 28 C.F.R. § 35.170 states:

(a) *Who may file.* An individual who believes that he or she or a specific class of individuals has been subjected to discrimination on the basis of disability by a public entity may, by himself or herself or by an authorized representative, file a complaint under this part.

(b) *Time for filing.* **A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the designated agency for good cause shown. A complaint is deemed to be filed under this section on the date it is first filed with any Federal agency.**

(c) *Where to file.* An individual may file a complaint with any agency that he or she believes to be the appropriate agency designated under subpart G of this part, or with any agency that provides funding to the public entity that is the subject of the complaint, or with the Department of Justice for referral as provided in § 35.171(a)(2).

§ 35.170 (emphasis added). The regulations fail to discuss the 180–day limit in the context of filing in federal court, as opposed to an agency. There is no case law regarding whether or not the 180–day limitations period in the regulations applies to filing in court, or just to agency filings. However, the remainder of Subpart F deals with the accep-

---

**10.** Unlike Title II, Title I of the ADA incorporates the procedures of Title VII of the Civil Rights Act of 1964, which requires a plaintiff to file a charge with the EEOC prior to filing a civil claim in federal court. 42 U.S.C. § 2000e–5(e) and (f)(1); *See Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991).

tance of complaints by federal agencies, agency resolution of complaints, agency issuance of a noncompliance letter, referral of the matter to the Attorney General, agency discretion to allow attorney fees, and alternative dispute resolution. All of these issues apply only to agency procedures, leading to the conclusion that the whole of this section is focused upon agency rules, and not limitations on · the federal courts.

■ When a federal civil rights law does not contain a statute of limitations, courts should borrow the statutes of limitations from state statutes governing personal injury suits, and must also refer to state rules for tolling statutes of limitations. *Cheeney v. Highland Community College,* 15 F.3d 79, 81–82 (7th Cir.1994) (citing *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 933 (7th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994)); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The parties present two possible analogous statutes.

### 2. 300 Days of the Wisconsin Fair Employment Act

■ The County suggested at oral argument that the 300–day period under Wisconsin Fair Employment Act limitations period should apply. Section 111.321 of the Wisconsin Statutes states that "no employer, labor organization, employment agency, licensing agency or other person may engage in any act of employment discrimination ... against any individual on the basis of ... handicap." Complaints under this statute must be filed with the Department of Industry, Labor, and Human Relations within 300 days of the alleged discrimination. Wis.Stat. § 111.39(1).

Corporation counsel has failed to file any supplemental brief supporting her theory that the WFEA limitations period applies. She cited no cases in the court hearing, and did not assert that the court should adopt the WFEA limitations period in her briefs.

The WFEA limitations period must be rejected because the scope of the WFEA is much more limited than that of Title II of the ADA. As noted in Section II(A) above, Title II applies to a wide variety of services, programs, and benefits aside from employment.

The WFEA applies only to employment discrimination. Further, statutes of limitations for fair employment acts have been rejected for use in § 1981 and § 1983 litigation. In *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), the Supreme Court rejected the use of the Maryland Fair Employment Act statute of limitations for commencing administrative proceedings in a § 1981 and § 1983 employment discrimination action. The Court resolved a conflict among the circuit courts regarding adoption of a state administrative statute of limitations in federal civil rights suits:

> Both the practical differences between the administrative proceeding contemplated by the Maryland statute [where the burden is on the agency to investigate] and a civil action in a federal court [where the burden is on the plaintiff to investigate], and the divergence in the objectives of the state administrative procedures to resolve employment discrimination suits and a federal cause of action to vindicate constitutional rights, lead us to conclude that borrowing the limitations period from Maryland's Art. 49B was inappropriate.

*Id.* at 55, 104 S.Ct. at 2932; *see also, Waters v. Wisconsin Steel Works,* 427 F.2d 476, 488 (7th Cir.) *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). (Seventh Circuit rejected the use of Illinois Fair Employment Act statute of limitations for a § 1981 employment discrimination complaint). Like the Maryland statute, the WFEA offers no private right of action and no compensation for discrimination. Wis.Stat. §§ 111.39 & 111.395. The WFEA limitations period is no more applicable in Title II of the ADA cases than it is in these other federal discrimination cases.

### 3. Six years of the Wisconsin statute on injury to character or other rights

■ The final limitations period offered by the parties is the six-year limitations period under Wisconsin law for injury to character or other rights. Wis.Stat. § 893.53 states:

> An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of

action accrues, except where a different period is expressly prescribed, or be barred.

This limitations period has been used for § 1983 claims arising in Wisconsin for sexual harassment claims, and for § 1981 claims as well. *See Gray v. Lacke,* 885 F.2d 399, 407 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). In *Gray,* the Seventh Circuit held that the six-year limitations period of Wisconsin's personal rights statute, rather than Wisconsin's three-year limitations period for personal injury actions, applied to a county employee's civil rights action against her supervisors under the First Amendment and § 1983. In 1987, the Supreme Court decided that in § 1981 cases, which deal with racism in employment, the most appropriate statute of limitations was the one governing personal injury actions. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (applying *Wilson*). The Court noted that a single state limitations statute should be used to govern all lawsuits under civil rights statutes which contain no limitations period, and that § 1981 was not a narrow statute dealing with economic rights, but instead a broad prohibition of racial discrimination in the employment field. *Id.* at 660–61, 107 S.Ct. at 2620–21. Therefore, the most appropriate statute was the one governing personal injury actions. *Id.* at 661–62, 107 S.Ct. at 2621–22.

Perhaps most significantly, in *Cheeney,* 15 F.3d at 81–82 (7th Cir.1994), the Seventh Circuit found that the most appropriate statute of limitations to borrow for § 504 of the Rehabilitation Act of 1973, was the one "governing personal injury suits." This is important because of the relationship between the Rehabilitation Act and Title II. The Rehabilitation Act's coverage was nearly identical to Title II, except it only applied to entities receiving federal funding. *See* II(A)(5) above for ·C.F.R. comments. The *Cheeney* court viewed the Rehabilitation Act as a civil rights statute with a panoply of rights involved, and that therefore, the personal injury statutes should apply. *Cheeney,* 15 F.3d at 81. As noted above, in Wisconsin, the most applicable personal injury statute is the one govern-

ing injuries to character and rights, which carries a six-year limitations period, and which has been applied to § 504 actions. *See Byrne v. Board of Educ., School Dist.* 53 Fair Empl.Prac.Cas. (BNA) 551, 51 Empl. Prac.Dec. (CCH) ¶ 39,303, 1989 WL 120646 (E.D.Wis.1989); *see also Ruh v. Samerjan,* 816 F.Supp. 1326 (E.D.Wis.1993) *aff'd,* 32 F.3d 570, 1994 WL 396215, 1994 U.S.App. LEXIS 19,867 (7th Cir.1994) (limitations period for university student's sexual harassment claim against professor under § 1983 is 6 years); *Thompson v. County of Rock,* 648 F.Supp. 861 (W.D.Wis.1986) (Section 1983 claim based on invalid search and arrest adopts 6–year Wisconsin statute of limitations); *Saldivar v. Cadena,* 622 F.Supp. 949 (W.D.Wis.1985) (claims by Hispanic state employee against supervisor for discrimination under §§ 1983, 1981, and 1985 are most closely analogous to "character or rights" injury and get a 6–year statute of limitations and not the WFEA period).

Because Title II, like the Rehabilitation Act, §§ 1983, 1981 and 1985, offers broad-ranging protection against a wide variety of forms discrimination, the six-year limitations period of Wis.Stat. § 893.53 applies, and Doe's filed her claim in a timely fashion. The County's motion for judgment on the pleadings shall be denied.

**IT IS THEREFORE ORDERED** that the County's motion to amend its answer is GRANTED.

**IT IS FURTHER ORDERED** that the County's motion for judgment on the pleadings is DENIED.