**Edward P. DOMINGUEZ, Plaintiff,**

v.

**CITY OF COUNCIL BLUFFS, IOWA, Defendant.**

**Civil No. 1–96–CV–90050.**

United States District Court, S.D. Iowa, Western Division.

Aug. 13, 1997.

---

Larry J. Melcher, Council Bluffs, IA, Bernard J. Monbouquette, Ruth W. Beyerhelm, Omaha, NE, for plaintiff.

Robert L. O'Brien, Council Bluffs, IA, for defendant.

## ORDER

PRATT, District Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment filed in this court on July 14, 1997. The Defendant seeks summary judgment on Plaintiff's claim asserting discrimination under the Americans with Disabilities Act, 42 U.S.C.A. § 12101 et seq. [ADA]. Plaintiff filed an Objection to Defendant's Motion for Summary Judgment on July 29, 1997 and Defendant filed a Reply on August 6, 1997. This motion is considered fully submitted.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Defendants' motion for summary judgment should be granted in part and denied in part.

### I. Background

The following facts are either undisputed or viewed in light most favorable to the nonmoving party for the motion being considered. See *United States v. City of Columbia, Mo.,* 914 F.2d 151, 153 (8th Cir. 1990); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990). Plaintiff began working for Defendant on April 27, 1992. He was injured in a job-related accident on or about June 24, 1994, which resulted in permanent injury to his left foot. On March 17, 1995, Plaintiff's position was terminated.

Plaintiff alleges that on June 30, 1995, he applied for a Utility Worker II position with Defendant for which he was qualified, despite the physical restrictions in his left foot. He was not hired for the position. He claims that on July 31, 1995, he discovered that a less-qualified applicant was hired instead.[1]

On May 29, 1996, Plaintiff filed a charge of disability discrimination with the Iowa Civil Rights Commission [ICRC] and the Equal Employment Opportunity Commission [EEOC]. Plaintiff's charge of discrimination against City of Council Bluffs, Iowa provided the following statement of "particulars":

I. I was first hired by the above-named Respondent in May 1992. I injured my foot in a work-related accident and was later discharged. On or about June 30, 1995, I applied for the position of Utility Worker II. On July 31, 1995, I learned that an applicant with no seniority or prior work experience with the Respondent was hired for the Utility Worker II position.

II. Respondent gave me no reasons for the action taken against me.

III. I believe I was discriminated against because of my disability in violation of Title I[2] of the Americans with Disabilities Act of 1990 in that Respondent denied me employment for the position of Utility Worker II.[3]

Plaintiff was issued a Right–to–Sue Letter from the EEOC on August 22, 1996. He filed the present action in this Court on November 20, 1996, within the 90–day limitation. Plaintiff's complaint alleges that the City of Council Bluffs, Iowa discriminated against him in hiring due to his disability in violation of the Americans With Disabilities Act, 42 U.S.C.A. § 12101, et seq. [ADA]. Defendant now moves for summary judgment on Plaintiff's complaint on the basis that Plaintiff failed to timely file his charge with the EEOC.

### II. Applicable Law

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994) The moving party must establish its right to judgment with such clarity there is no room

---

1. Note that in ¶ 5 of Plaintiff's Affidavit attached to his Objection To Defendant's Motion For Summary Judgment, Plaintiff states that the date of the alleged discrimination is June 30, 1995.

2. Although plaintiff only claims discrimination under Title I in this charge, he subsequently states he is claiming under both Title I and II of the ADA. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

3. Exhibit 1, attached to Plaintiff's Complaint.

for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this showing has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. Analysis

Plaintiff maintains that he was discriminated against in employment by Defendant in violation of the ADA. Specifically, he claims that he was not hired for a position for which he was qualified and another non-disabled applicant with less experience was hired for that same position. Plaintiff alleges that his disability is the injury to his left foot resulting from the work-related accident in 1994.

Defendant argues that Plaintiff may not allege claims of employment discrimination under the ADA because he failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In order to properly address Defendant's Motion for Summary Judgment, the court must address the question of timeliness in regards to Plaintiff's claim brought under each title. Then, the court will deal with the question of which statute of limita-

tions to apply to Title II cases brought in federal court.

### A. Claims Brought Under Title I of the ADA

■ This court agrees that an employee making a claim under Title I of the ADA (which tracks the procedures for Title VII actions) is required to timely file an EEOC charge. See 42 U.S.C. § 12117(a); 42 U.S.C.A. § 2000e–5(e); *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297 (S.D.Tex.1996); *Osborn v. E.J. Brach, Inc.,* 864 F.Supp. 56 (N.D.Ill.1994); *Montgomery v. Atlanta Family Restaurants, Inc.,* 752 F.Supp. 1575 (N.D.Ga.1990). Plaintiff failed to do this and thus Defendant's Motion for Summary Judgment in regards to Plaintiff's claim under Title I should be granted.

■ In Iowa, where there is a state agency, the Iowa Civil Rights Commission (ICRC), designated for consideration of discrimination claims, a claimant has 300 days after an unlawful employment practice to file his EEOC charge. See *Winters v. Iowa State Univ.,* 768 F.Supp. 231, 237 (N.D.Ill. 1991), aff'd 962 F.2d 11, *cert. denied* 506 U.S. 923, 113 S.Ct. 344, 121 L.Ed.2d 260, *and rehearing denied* 506 U.S. 1016, 113 S.Ct. 648, 121 L.Ed.2d 576. To determine the operative date to begin the limitations period, the court must first identify the "unlawful employment practice" challenged by the complaint. *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). For purposes of measuring the limitations period, "[t]he proper focus is upon the time of the discriminatory act[ ]." *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. Thus, in this case, the statute of limitations period began when Plaintiff was notified that he was not hired for the Utility Worker II position.

Even if the court assumes that Plaintiff was first notified of this employment decision on July 31, 1995, when he discovered that another applicant had been hired by defendant, he would have been required to file a charge with the EEOC by May 28, 1996. He filed his charge on May 29, 1996, one day past the limitations period.[4]

---

4. If the Court were to use the June 30, 1995 date, as alleged in Plaintiff's Affidavit ¶ 5, then Plaintiff

Plaintiff claims that he filed a charge of discrimination with the City of Council Bluffs Human Relations Commission during the week of March 13, 1995.[5] The court finds no relevance to this alleged filing date as Plaintiff's Complaint refers to discrimination in hiring on or about July 31, 1995. March 31, 1995 is about four months prior to this date.

Thus, Plaintiff's claim under Title I of the ADA is untimely and Defendant's Motion for Summary Judgment, in regards to this claim, should be granted.

### B. Claims Brought Under Title II of the ADA

■ However, the court's analysis can not end here as Plaintiff also asserts his disability discrimination claim under Title II of the ADA.[6] The threshold issue in this case, then, is whether Plaintiff may file an employment discrimination action under Title II of the ADA. Title II, of the ADA, provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the *services, programs, or activities of a public entity* [including any ... local government], or be subjected to discrimination by any such entity. [emphasis added]

42 U.S.C. § 12132.

A review of cases reveals that the eighth circuit court has not yet addressed the question of whether Title II creates a cause of action for employment discrimination. At least three other circuit courts, however, have addressed this issue and all have ruled that Title II is applicable to employment actions. See e.g. *Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522 (11th Cir.1997); *Doe v. University of Maryland Medical System*

*Corp.,* 50 F.3d 1261 (4th Cir.1995); *Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), cert. denied, 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991).

Additionally, the majority of the federal district courts which have ruled on this issue have held that Title II is applicable in employment causes of action. See e.g., *Hernandez v. City of Hartford,* 959 F.Supp. 125, 129 (D.Conn.1997); *Winfrey v. City of Chicago,* 957 F.Supp. 1014, 1022–23 (N.D.Ill.1997); *Wagner,* 939 F.Supp. at 1309–10; *Graboski v. Guiliani,* 937 F.Supp. 258, 268–69 (S.D.N.Y. 1996); *Williams v. Wasserman,* 937 F.Supp. 524, 528 (D.Md.1996); *Doe v. County of Milwaukee,* 871 F.Supp. 1072, 1074 (E.D.Wis. 1995); *Dertz v. City of Chicago,* 912 F.Supp. 319, 323–325 (N.D.Ill.1995); *Ethridge v. Alabama,* 847 F.Supp. 903, 906 (M.D.Ala.1993); *Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276, 1278 (W.D.Wis. 1993); *Eisfelder v. Michigan Dept. of Natural Resources,* 847 F.Supp. 78, 83 (W.D.Mich. 1993); *Noland v. Wheatley,* 835 F.Supp. 476, 483 (N.D.Ind.1993) *Finley v. Giacobbe,* 827 F.Supp. 215, 219–20 (S.D.N.Y.1993).

While noting that a minority of courts have held that Title II is inapplicable in causes of action on employment,[7] this court adheres to the majority view holding that Title II is applicable in such causes of action. The crucial question is whether or not the phrase "services, programs, and activities" includes employment within its scope. See 42 U.S.C.A. § 12132. These words are not defined anywhere in the ADA, but Title II, by directing the Attorney General and her delegates to promulgate regulations necessary to implement the Act, essentially defers to their judgment in defining these terms. See 42 U.S.C. § 12134(a). Their construction should not be overturned by this court merely because there is another possible interpre-

---

would be one month and one day past the limitations period.

**5.** See ¶ 3 of Plaintiff's Affidavit attached to his Objection To Defendant's Motion For Summary Judgment.

**6.** See Brief in Support of Plaintiff's Objection To Defendant's Motion for Summary Judgment, page 2.

**7.** See e.g. *Bledsoe v. Palm Beach Soil and Water Conservation Dist.,* 942 F.Supp. 1439, 1442 (S.D.Fla.1996). Additionally, at least one federal district court has referenced to this same view, although not holding specifically on the question. See e.g. *Hutchinson v. United Parcel Service, Inc.,* 883 F.Supp. 379, 396–97 (N.D.Iowa 1995) (distinguishing between "Title II of the ADA, which pertains to public entities or public services, [and] Title I, which pertains to employment.")

tation of the statute. *INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *rehearing denied* 451 U.S. 964, 101 S.Ct. 2037, 68 L.Ed.2d 342 (1981).

These regulations indicate that employment discrimination is prohibited under the purview of "activities of public entities," pursuant to Title II of the ADA. See 28 C.F.R. § 35.140(a). The regulations specifically state that "[n]o qualified individual with a disability shall, on the basis of disability, be subjected to discrimination *in employment* under any service, program, or activity conducted by a public entity." [emphasis added] *Id.* Although the guidelines do not amount to explicit authority which the court is bound to follow, they do constitute "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Additionally, it has been held that such regulations are given controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." See *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); See also *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982) (holding that the regulations promulgated by the Department are entitled to substantial deference); *Helen L. v. DiDario,* 46 F.3d 325 (3rd.Cir.1995) (holding same).

■ Having decided that Title II is applicable in the context of employment, the next issue before this court is whether under Title II, Plaintiff was required to exhaust all administrative remedies prior to filing suit in federal court. Having reviewed the statutory language, the Code of Federal Regulations, and the applicable case law, this court believes that plaintiff was not required to exhaust all administrative remedies.

■ Unlike Title I which tracks the procedural requirements of Title VII of the Civil Rights Act of 1964 [8], the requirements of Title II are expressly modeled after the Section 504 of the Rehabilitation Act of 1973 and draws its procedures and remedies therefrom. See 42 U.S.C. § 12134(b) (requiring that the regulations "be consistent with ... the coordination regulations under part 41 of title 28, Code of Federal Regulations [under Section 504 of the Rehabilitation Act of 1973]"); 20 C.F.R. § 35.140; *Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 930 (8th Cir.1994). The Rehabilitation Act does not require the exhaustion of administrative remedies. *Wagner,* 939 F.Supp. at 1308.

Additionally, the regulations, promulgated pursuant to Title II, do not require exhaustion of administrative remedies. See 28 C.F.R. §§ 35.170–78. The section governing the resolution of complaints specifically states "[a]*t any time,* the complainant may file a private suit." [emphasis added] 28 C.F.R. 35.172(b); *Cook v. Rhode Island Dep't of Mental Health, Retardation & Hosps.,* 783 F.Supp. 1569, 1571–72 (D.R.I.1992), aff'd, 10 F.3d 17 (1st Cir.1993). Appendix A to Subpart F, analyzing this section further restates the rule of no exhaustion:

> The Act requires the Department of Justice to establish administrative procedures for resolution of complaints, *but does not require complainants to exhaust these administrative remedies.* The Committee Report makes clear that Congress intended to provide a private right of action with the full panoply of remedies for individual victims of discrimination. *Because the Act does not require exhaustion of administrative remedies,* the complainant may elect to proceed with a private suit at any time. [emphasis added].

28 C.F.R. § 35.172, App. A.[9]

Based on the language of Title II, the regulations promulgated by the Department

---

**8.** See 42 U.S.C. § 2000e–5(e) and (f)(1); See also *McSherry v. Trans World Airlines, Inc.,* 81 F.3d 739, 740 (8th Cir.1996) at footnote 3; *Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir.1996) (where the court held that the ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, et seq., citing 42 U.S.C. § 12117(a)).

**9.** See also the appendix to subpart F of part 35 quoting the following passage from the House report discussion regarding proceeding directly to federal court under Title II of the ADA:

of Justice, and the majority view of the federal district courts, there appears to be no requirement that Plaintiff file an administrative complaint within 300 days or otherwise follow the procedural requirements of Title I when filing a Title II claim. *Dertz,* 912 F.Supp. at 324; *Finley,* 827 F.Supp. at 219. Consequently, Plaintiff's failure to file a claim with the EEOC with 300 days is not detrimental to his case, so long as he has filed in this court in a timely fashion.

### C. The Applicable Statute of Limitations Under Title II

 Title II does not identify a statute of limitations for claims initiated in federal court. The Rehabilitation Act similarly lacks a statute of limitations. If a federal civil rights statute does not impose its own specific statute of limitations, then a court should borrow the statute of limitations from the applicable state governing personal injury suits. See *Cheeney v, Highland Community College,* 15 F.3d 79, 81–82 (7th Cir.1994); See also *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Doe* 871 F.Supp. at 1077. Accordingly, for purposes of Plaintiff's claims under Title II of the ADA, Iowa's two year personal injury statute of limitations applies. See *Cheeney,* 15 F.3d at 81 (applying two year limitations period to claim under section 504 of the Rehabilitation Act); see also Iowa Code § 614.1(2); *Toney v. U.S. Healthcare,* 840 F.Supp. 357, 360 (E.D.Pa.1993); aff'd 37 F.3d 1489 (3rd. Cir. 1994); *Piquard v. City of East Peoria,* 887 F.Supp. 1106, 1112 & n. 1 (C.D.Ill.1995) (stating that, "the most applicable Illinois statute of limitations for ADA claims is the two year one applicable to personal injury suits which has been applied to Section 504 claims"); *Doe,* 871 F.Supp. at 1076–1078 (applying Wisconsin's six-year limitations period for "injury to character or other rights" to ADA claim).

Defendant has not challenged Plaintiff's claim as untimely under Iowa Code § 614.1(2). Moreover, such a challenge would fail. The facts, viewed in the light

"[C]onsistent with section 504 [of the Rehabilitation Act of 1973], it is not the Committee's intent that persons with disabilities need to exhaust

most favorable to Plaintiff, as the nonmoving party, suggest that Plaintiff knew of the allegedly discriminatory employment practice on or about July 31, 1995. Thus, the statute of limitations would not have expired until July 31, 1997. Plaintiff timely commenced this action on November 20, 1996. Thus, Plaintiff's claim under Title II of the ADA is not barred due to his failure to file a timely complaint with the EEOC.

### IV. Conclusion

For the reasons outlined above, Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. The Clerk of Court is directed to enter judgment in favor of City of Council Bluffs and against Plaintiff on Plaintiff's claim under Title I of the ADA. Per the Scheduling Order entered on March 7, 1997, the above entitled case is set for trial on Plaintiff's claim under Title II of the ADA on June 22, 1998 at 9:00 a.m. A final pretrial conference will be scheduled in advance of the trial date.

IT IS SO ORDERED.

Federal administrative remedies before exercising their private right of action." 28 C.F.R., App. A, Comment on subpart F at 463.